FILED

2014 SEP 17 PM 1:49

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2014 Grand Jury

CR14-0548

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 14-_____ |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 26 U.S.C. § 7206(1): Subscribing to a False Income Tax Return] |
| MICHAEL HUYNH, | |
| Defendant. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Indictment:

1.   Defendant MICHAEL HUYNH ("defendant HUYNH") was a resident of Los Angeles, California, within the Central District of California.  Defendant HUYNH co-owned M.T.P. Medical Clinic, Inc. ("M.T.P. Medical Clinic"), a medical clinic located in Reseda, California, within the Central District of California.

//

//

SMA

2.    Defendant HUYNH maintained and controlled account number xxxxxx-8385 at Wells Fargo Bank ("defendant HUYNH's Wells Fargo Bank account").

3.    Unindicted co-conspirator Farhad N. Dany Sharim ("Sharim") was a pharmacist licensed in the state of California.

4.    Sharim co-owned and controlled Century Discount Pharmacy ("CDP"), a pharmacy in Reseda, California, within the Central District of California.

Health Insurance Plans

5.    The Federal Employees Health Benefits Program ("FEHBP") is a federally funded health care benefits program for the benefit of government employees, retirees, and their dependents. The FEHBP program is administered by the Office of Personnel Management. Aetna Life Insurance Company ("Aetna") was a health insurance provider that operated private plans, affecting commerce, under which medical benefits, items, and services were provided to individuals in California, and elsewhere, in exchange for payment. FEHBP, Aetna, and other health insurance providers, reimbursed medical service providers, including pharmacies, that provided medical benefits, items, and services to patients, including prescription drugs, covered by its insurance plans.

The Medical Claims Process

6.    When a patient covered by a health care benefit program provided a prescription for drugs to CDP, CDP filled the prescription, dispensed the drug to the patient, and submitted a claim to the health care benefit program for reimbursement for the patient's drug claim. The health care benefit program then

1  reimbursed CDP for the claim by making an electronic payment into a

2  bank account belonging to CDP or by mailing a check to CDP.

3        7.    Some health insurance providers used pharmacy benefit

4  managers, such as CVS Caremark Corporation ("CVS Caremark") and

5  Express Scripts, Inc. ("Express Scripts"), that served as third-party

6  administrators for the health care benefit program and provided claim

7  processing services for prescription drug claims between the CDP and

8  the health care benefit program.  In such cases, CDP entered into a

9  retail network agreement with the pharmacy benefit manager to submit

10  the claims to the pharmacy benefit manager, who then reimbursed CDP.

11  The health care benefit program, in turn, reimbursed the pharmacy

12  benefit manager for its payments to CDP.

13  B.   OBJECT OF THE CONSPIRACY

14        8.    Beginning on a date unknown, but no later than in or about

15  January 2004, and continuing until in or about November 2009, in Los

16  Angeles County, within the Central District of California, and

17  elsewhere, defendant HUYNH, co-conspirator Sharim, and others known

18  and unknown to the Grand Jury, knowingly combined, conspired, and

19  agreed to commit the following offense against the United States,

20  namely, health care fraud, in violation of Title 18, United States

21  Code, Section 1347.

22  C.   MANNER AND MEANS OF THE CONSPIRACY

23        9.    The object of the conspiracy was carried out, and to be

24  carried out, in substance, as follows:

25        a.    Defendant HUYNH provided co-conspirator Sharim with

26  falsified prescriptions for drugs that had purportedly been

27  authorized by Dr. H.H. for patients of the M.T.P. Medical Clinic who

28  were insured by health care benefit programs.  Dr. H.H. did not work

1   at the M.T.P. Medical Clinic and these patients did not actually
2   receive the drugs that had been purportedly prescribed by Dr. H.H.
3        b.   Co-conspirator Sharim and CDP then submitted to health
4   care benefit programs and pharmacy benefits managers false and
5   fraudulent claims for prescription drugs for the patients whose
6   prescriptions had been provided by defendant HUYNH, even though co-
7   conspirator Sharim and defendant HUYNH knew that CDP had not actually
8   filled these prescriptions and had not dispensed drugs to these
9   patients.
10       c.   CDP then received payments from the health care
11  benefit programs and pharmacy benefit managers as reimbursement for
12  the false and fraudulent claims for prescription drugs that had been
13  submitted in the names of patients whose information had been
14  provided by defendant HUYNH.
15       d.   Between in or about January 2004, and in or about June
16  2009, co-conspirator Sharim and CDP submitted false and fraudulent
17  claims for prescription drugs, when in truth and in fact those drugs
18  had not been dispensed to patients, resulting in substantial
19  overpayments to CDP from various health care benefit programs and
20  pharmacy benefit managers to which CDP was not entitled.
21       e.   In order to disguise the payments that he received
22  from co-conspirator Sharim in exchange for the falsified
23  prescriptions, defendant HUYNH provided co-conspirator Sharim with
24  false invoices in the name of H.D.H. Advertising for purported
25  advertising services rendered to CDP.
26       f.   Defendant HUYNH received from co-conspirator Sharim
27  and CDP a portion of the insurance reimbursement proceeds generated
28  from the false and fraudulent billings, namely, defendant HUYNH

1  received approximately eighty-two CDP checks signed by co-conspirator

2  Sharim totaling approximately $1,172,907, which were disguised as

3  payments for advertising services and made payable to defendant

4  HUYNH's grandniece, H.D.H. (the "kickback payment checks").

5          g.   Defendant HUYNH deposited the kickback payment checks

6  into defendant HUYNH's Wells Fargo Bank account.

7  D.   OVERT ACTS

8          10.   In furtherance of the conspiracy and to accomplish its

9  object, defendant HUYNH, co-conspirator Sharim, and others known and

10 unknown to the Grand Jury committed, and willfully caused others to

11 commit, the following overt acts, among others, in the Central

12 District of California, and elsewhere:

13     Overt Act No. 1:     Defendant HUYNH signed an agreement with CDP

14 entitled "Contract For Provision Of Advertising And Marketing

15 Services," which purported to be effective as of November 1, 1996,

16 and which purported that H.D.H. Advertising would provide advertising

17 and marketing services to CDP.

18     Overt Act No. 2:     On or about March 16, 2009, defendant HUYNH

19 delivered to co-conspirator Sharim and CDP a falsified prescription

20 for patient M.T. for the following drugs: (1) Aciphex (prescription

21 number 384344); (2) Maxalt-MLT (prescription number 384345);

22 (3) Flovent (prescription number 384346); and (4) Aldara Cream

23 (prescription number 384347).

24     Overt Act No. 3:     On or about March 16, 2009, co-conspirator

25 Sharim submitted false and fraudulent claims to CVS Caremark

26 requesting reimbursement for drugs that had been purportedly filled

27 and dispensed to patient M.T. in the following amounts for the

28 following drugs: (1) $196.24 for Aciphex (prescription number

1  384344); (2) $316.40 for Maxalt-MLT (prescription number 384345); and

2  (3) $226.71 for Flovent (prescription number 384346); and (4) $619.95

3  for Aldara Cream (prescription number 384347).

4      Overt Act No. 4:    On or about April 8, 2009, co-conspirator

5  Sharim caused CDP to receive payments from CVS Caremark as

6  reimbursement for prescriptions that CDP had purportedly filled and

7  dispensed to patient M.T. in the following amounts for the following

8  drugs: (1) $135.36 for Aciphex (prescription number 384344);

9  (2) $215.69 for Maxalt-MLT (prescription number 384345); (3) $160.80

10  for Flovent (prescription number 384346); and (4) $469.16 for Aldara

11  Cream (prescription number 384347).

12     Overt Act No. 5:    On or about April 21, 2009, defendant HUYNH

13  provided to co-conspirator Sharim and CDP a false invoice in the name

14  of H.D.H. Advertising for purported advertising services for CDP in

15  the amount of $12,767.

16     Overt Act No. 6:    On or about April 30, 2009, defendant HUYNH

17  delivered to co-conspirator Sharim and CDP a falsified prescription

18  for patient T.A.H. for the following drugs: (1) Levaquin

19  (prescription number 387616); (2) Ultrase MT (prescription number

20  387617); (3) Cipro HC (prescription number 387618); and (4) Naftin

21  Gel 1% (prescription number 387619).

22     Overt Act No. 7:    On or about April 30, 2009, co-conspirator

23  Sharim submitted false and fraudulent claims to CVS Caremark

24  requesting reimbursement for drugs that had been purportedly filled

25  and dispensed to patient T.A.H. in the following amounts for the

26  following drugs: (1) $286.57 for Levaquin (prescription number

27  387616); (2) $185.97 for Ultrase MT (prescription number 387617);

28

1 | (3) $120.88 for Cipro HC (prescription number 387618); and

2 | (4) $156.60 for Naftin Gel 1% (prescription number 387619).

3 |     <u>Overt Act No. 8</u>:   On or about May 5, 2009, defendant HUYNH

4 | received check number 9202 from CDP in the amount of $10,264 made

5 | payable to H.D.H. and signed by co-conspirator Sharim as purported

6 | payment for advertising services.

7 |     <u>Overt Act No. 9</u>:   On or about May 5, 2009, defendant HUYNH

8 | deposited check number 9202 from CDP made payable to H.D.H. and

9 | signed by co-conspirator Sharim as purported payment for advertising

10 | services into defendant HUYNH's Wells Fargo Bank account.

11 |     <u>Overt Act No. 10</u>:   On or about May 5, 2009, defendant HUYNH

12 | delivered to co-conspirator Sharim and CDP a falsified prescription

13 | for patient L.L. for the following drugs: (1) Ultrase MT

14 | (prescription number 388026);(2) Advair Diskus (prescription number

15 | 388027); (3) Tobradex (prescription number 388028); and (4) Solaraze

16 | (prescription number 388029).

17 |     <u>Overt Act No. 11</u>:   On or about May 5, 2009, co-conspirator

18 | Sharim submitted false and fraudulent claims to Express Scripts

19 | requesting reimbursement for drugs that had been purportedly filled

20 | and dispensed to patient L.L. in the following amounts for the

21 | following drugs: (1) $218.92 for Ultrase MT (prescription number

22 | 388026); (2) $237.97 for Advair Diskus (prescription number 388027);

23 | (3) $107.87 for Tobradex (prescription number 388028); and

24 | (4) $438.98 for Solaraze (prescription number 388029).

25 |     <u>Overt Act No. 12</u>:   On or about May 6, 2009, defendant HUYNH

26 | delivered to co-conspirator Sharim and CDP a falsified prescription

27 | for patient C.H., who is defendant HUYNH's wife, for the following

28 | drugs: (1) Levaquin (prescription number 388206); (2) Flovent

1  (prescription number 388207); (3) Aldara Cream (prescription number

2  388208); and (4) Arthrotec (prescription number 383209).

3       Overt Act No. 13:   On or about May 6, 2009, co-conspirator

4  Sharim submitted false and fraudulent claims to Aetna requesting

5  reimbursement for drugs that had been purportedly filled and

6  dispensed to patient C.H. in the following amounts for the following

7  drugs: (1) $286.56 for Levaquin (prescription number 388206);

8  (2) $226.71 for Flovent (prescription number 388207); (3) $650.94 for

9  Aldara Cream (prescription number 388208); and (4) $169.29 for

10  Arthrotec (prescription number 388209).

11       Overt Act No. 14:   On or about May 14, 2009, defendant HUYNH

12  delivered to CDP a falsified prescription for patient D.K. for the

13  following drugs: (1) Arthrotec (prescription number 388780);

14  (2) Cipro HC (prescription number 388781); (3) Tobradex (prescription

15  number 388782); and (4) Dovonex (prescription number 388783).

16       Overt Act No. 15:   On or about May 14, 2009, co-conspirator

17  Sharim caused CDP to submit false and fraudulent claims to Express

18  Scripts requesting reimbursement for drugs that had been purportedly

19  filled and dispensed to patient D.K. in the following amounts for the

20  following drugs: (1) $169.29 for Arthrotec (prescription number

21  388780); (2) $120.88 for Cipro HC (prescription number 388781);

22  (3) $107.87 for Tobradex (prescription number 388782); and

23  (4) $528.72 for Dovonex (prescription number 388783).

24       Overt Act No. 16:   On or about May 19, 2009, co-conspirator

25  Sharim caused CDP to receive payments from Aetna as reimbursement for

26  prescriptions that CDP had purportedly filled and drugs dispensed to

27  patient C.H. in the following amounts for the following drugs:

28  (1) $189.40 for Levaquin (prescription number 388206); (2) $164.72

1  for Flovent (prescription number 388207); (3) $516.83 for Aldara

2  Cream (prescription number 388208); and (4) $92.06 for Arthrotec

3  (prescription number 383209).

4      Overt Act No. 17:   On or about May 19, 2009, defendant HUYNH

5  provided to co-conspirator Sharim and CDP a false invoice for

6  purported advertising services for CDP in the name of H.D.H.

7  Advertising in the amount of $8,557.

8      Overt Act No. 18:   On or about May 19, 2009, defendant HUYNH

9  received check number 9232 from CDP in the amount of $8,557 made

10 payable to H.D.H. and signed by co-conspirator Sharim as purported

11 payment for advertising services.

12     Overt Act No. 19:   On or about May 20, 2009, defendant

13 HUYNH deposited check number 9232 from CDP made payable to H.D.H. and

14 signed by co-conspirator Sharim purportedly as payment for purported

15 advertising services into defendant HUYNH's Wells Fargo Bank account.

16     Overt Act No. 20:   On or about May 26, 2009, defendant

17 HUYNH delivered to co-conspirator Sharim and CDP a falsified

18 prescription for patient T.N. for the following drugs: (1) Abilify

19 (prescription number 389464); (2) Ultrase MT (prescription number

20 389465); (3) Flovent (prescription number 389466); and (4) Pataday

21 (prescription number 389467).

22     Overt Act No. 21:   On or about May 26, 2009, co-conspirator

23 Sharim submitted false and fraudulent claims to CVS Caremark

24 requesting reimbursement for drugs that had been purportedly filled

25 and dispensed to patient T.N. in the following amounts for the

26 following drugs: (1) $673.92 for Abilify (prescription number

27 389464); (2) $185.97 for Ultrase MT (prescription number 389465);

28

(3) $226.71 for Flovent (prescription number 389466); and (4) $102.19 for Pataday (prescription number 389467).

Overt Act No. 22:   On or about May 27, 2009, co-conspirator Sharim caused CDP to receive payments from CVS Caremark for drugs that had been purportedly filled and dispensed to patient T.A.H. in the following amounts for the following drugs: (1) $176.12 for Levaquin (prescription number 387616); (2) $134.79 for Ultrase MT (prescription number 387617); (3) $74.91 for Cipro HC (prescription number 387618); and (4) $106.38 for Naftin Gel 1% (prescription number 387619).

Overt Act No. 23:   On or about June 2, 2009, defendant HUYNH provided to co-conspirator Sharim and CDP a false invoice for purported advertising services for CDP in the name of H.D.H. Advertising in the amount of $10,307.

Overt Act No. 24:   On or about June 2, 2009, defendant HUYNH received check number 9260 from CDP in the amount of $10,307 made payable to H.D.H. and signed by co-conspirator Sharim as purported payment for advertising services.

Overt Act No. 25:   On or about June 2, 2009, defendant HUYNH deposited CDP check number 9260 made payable to H.D.H. and signed by co-conspirator Sharim purportedly as payment for advertising services into defendant HUYNH's Wells Fargo Bank account.

Overt Act No. 26:   On or about June 3, 2009, co-conspirator Sharim caused CDP to receive payments from Express Scripts as reimbursement for prescriptions that CDP had purportedly filled and drugs dispensed to patient L.L. in the following amounts for the following drugs: (1) $153.91 for Ultrase MT (prescription number 388026); (2) $149.78 for Advair Diskus (prescription number 388027);

10

1   (3) $41.48 for Tobradex (prescription number 388028); and (4) $317.12

2   for Solaraze (prescription number 388029).

3       Overt Act No. 27:   On or about June 3, 2009, co-conspirator

4   Sharim caused CDP to receive payments from Express Scripts as

5   reimbursement for prescriptions that CDP had purportedly filled and

6   drugs dispensed to patient D.K. in the following amounts for the

7   following drugs: (1) $112.60 for Arthrotec (prescription number

8   388780); (2) $52.30 for Cipro HC (prescription number 388781);

9   (3) $41.48 for Tobradex (prescription number 388782); and (4) $391.80

10  for Dovonex (prescription number 388783).

11      Overt Act No. 28:   On or about June 4, 2009, defendant

12  HUYNH delivered to co-conspirator Sharim and CDP a falsified

13  prescription for patient Q.N. for the following drugs: (1) Levaquin

14  (prescription number 390238); (2) Replax (prescription number

15  390239); (3) Flovent (prescription number 390240); and

16  (4) Altabax Ointment (prescription number 390241).

17      Overt Act No. 29:   On or about June 4, 2009, co-conspirator

18  Sharim submitted false and fraudulent claims to Aetna requesting

19  reimbursement for drugs that had been purportedly filled and

20  dispensed to patient Q.N. in the following amounts for the following

21  drugs: (1) $286.56 for Levaquin (prescription number 390238);

22  (2) $286.28 for Replax (prescription number 390239); (3) $226.71 for

23  Flovent (prescription number 390240); and (4) $128.55 for Altabax

24  Ointment (prescription number 390241).

25      Overt Act No. 30:   On or about June 16, 2009, co-conspirator

26  Sharim caused CDP to receive payments from Aetna as reimbursement for

27  prescriptions that CDP had purportedly filled and drugs dispensed to

28  patient Q.N. in the following amounts for the following drugs:

1   (1) $210.83 for Levaquin (prescription number 390238); (2) $210.59

2   for Replax (prescription number 390239); (3) $169.95 for Flovent

3   (prescription number 390240); and (4) $76.52 for Altabax Ointment

4   (prescription number 390241).

5        Overt Act No. 31:   On or about June 17, 2009, defendant HUYNH

6   received check number 9289 from CDP in the amount of $3,529 made

7   payable to H.D.H. and signed by co-conspirator Sharim as purported

8   payment for advertising services.

9        Overt Act No. 32:   On or about June 24, 2009, co-conspirator

10  Sharim caused CDP to receive payments from CVS Caremark as

11  reimbursement for prescriptions that CDP had purportedly filled and

12  drugs dispensed to patient T.N. in the following amounts for the

13  following drugs: (1) $567.60 for Abilify (prescription number

14  389464); (2) $185.39 for Ultrase MT (prescription number 389465);

15  (3) $191.94 for Flovent (prescription number 389466); and

16  (4) $87.34 for Pataday (prescription number 389467).

17       Overt Act No. 33:   On or about November 4, 2009, defendant

18  HUYNH obtained cashier's check number 77902130 in the amount of

19  $210,000 drawn from defendant HUYNH's Wells Fargo Bank account

20  payable to CVS Caremark, and referencing the National Provider

21  Identifier number for CDP, as partial payment of amounts owed by CDP

22  to CVS Caremark as reimbursement by CDP for having submitted false

23  claims to CVS Caremark.

24

25

26

27

28

12

COUNT TWO

[26 U.S.C. § 7206(1)]

11.   On or about April 12, 2008, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false joint U.S. Individual Income Tax Return, IRS Form 1040, for defendant HUYNH and his wife, C.H., for the taxable year ending December 31, 2007, which defendant HUYNH verified by written declaration that it was made under the penalties of perjury, and caused that tax return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported total income of $100,294 on Line 22, when, as defendant HUYNH then well knew and believed, his and C.H.'s total income in taxable year 2007 was substantially more than $100,294.

COUNT THREE

[26 U.S.C. § 7206(1)]

12.   On or about September 3, 2008, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false U.S. Income Tax Return for an S Corporation, IRS Form 1120S, for M.T.P. Medical Clinic, Inc. ("M.T.P. Medical Clinic"), for the taxable year ending December 31, 2007, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported gross receipts or sales of $291,572 on Line 1a, when, as defendant HUYNH then well knew and believed, M.T.P. Medical Clinic's total gross receipts and sales in taxable year 2007 were substantially more than $291,572.

COUNT FOUR

[26 U.S.C. § 7206(1)]

13.   On or about March 5, 2009, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false joint Amended U.S. Individual Income Tax Return, IRS Form 1040X, for defendant HUYNH and his wife, C.H., for the taxable year ending December 31, 2007, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that tax return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported adjusted gross income of $90,220 on Line 1c, when, as defendant HUYNH then well knew and believed, his and C.H.'s total income in taxable year 2007 was substantially more than $90,220.

COUNT FIVE

[26 U.S.C. § 7206(1)]

14.   On or about April 12, 2009, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false joint U.S. Individual Income Tax Return, IRS Form 1040, for defendant HUYNH and his wife, C.H., for the taxable year ending December 31, 2008, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that tax return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter, contained therein, in that the tax return falsely reported total income of $87,811 on Line 22, when, as defendant HUYNH then well knew and believed, his and C.H.'s total income in taxable year 2008 was substantially more than $87,811.

COUNT SIX

[26 U.S.C. § 7206(1)]

15.   On or about August 27, 2009, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false U.S. Income Tax Return for an S Corporation, IRS Form 1120S, for M.T.P. Medical Clinic, Inc. ("M.T.P. Medical Clinic"), for the taxable year ending December 31, 2008, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported gross receipts or sales of $293,751 on Line 1a, when, as defendant HUYNH then well knew and believed, M.T.P. Medical Clinic's total gross receipts and sales in taxable year 2008 were substantially more than $293,751.

COUNT SEVEN

[26 U.S.C. § 7206(1)]

16.   On or about March 30, 2010, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false U.S. Income Tax Return for an S Corporation, IRS Form 1120S, for M.T.P. Medical Clinic, Inc. ("M.T.P. Medical Clinic"), for the taxable year ending December 31, 2009, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported gross receipts or sales of $262,517 on Line 1a, when, as defendant HUYNH then well knew and believed, M.T.P. Medical Clinic's total gross receipts and sales in taxable year 2009 were substantially more than $262,517.

COUNT EIGHT

[26 U.S.C. § 7206(1)]

17.   On or about April 1, 2010, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false joint U.S. Individual Income Tax Return, IRS Form 1040, for defendant HUYNH and his wife, C.H., for the taxable year ending December 31, 2009, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that tax return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported total income of $97,033 on Line 22, when, as defendant HUYNH then well knew and believed, his and C.H.'s total income in taxable year 2009 was substantially more than $97,033.

1                              COUNT NINE

2                          [26 U.S.C. § 7206(1)]

3        18.  On or about April 7, 2011, in Los Angeles County, within

4   the Central District of California, defendant MICHAEL HUYNH

5   ("defendant HUYNH") did willfully make and subscribe to a false U.S.

6   Income Tax Return for an S Corporation, IRS Form 1120S, for M.T.P.

7   Medical Clinic, Inc. ("M.T.P. Medical Clinic"), for the taxable year

8   ending December 31, 2010, which defendant HUYNH verified by a written

9   declaration that it was made under the penalties of perjury, and

10  caused that return to be filed with the Internal Revenue Service,

11  which defendant HUYNH did not believe to be true and correct as to

12  every material matter contained therein, in that the tax return

13  falsely reported gross receipts or sales of $261,172 on Line 1a,

14  when, as defendant HUYNH then well knew and believed, M.T.P. Medical

15  Clinic's total gross receipts and sales in taxable year 2010 were

16  substantially more than $261,172.

17

18

19

20

21

22

23

24

25

26

27

28

COUNT TEN

[26 U.S.C. § 7206(1)]

19.   On or about April 7, 2011, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false joint U.S. Individual Income Tax Return, IRS Form 1040, for defendant HUYNH and his wife, C.H., for the taxable year ending December 31, 2010, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that tax return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported total income of $57,778 on Line 22, when, as defendant HUYNH then well knew and believed, his and C.H.'s total income in taxable year 2010 was substantially more than $57,778.

## COUNT ELEVEN

### [26 U.S.C. § 7206(1)]

20.   On or about April 6, 2012, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false joint U.S. Individual Income Tax Return, IRS Form 1040, for defendant HUYNH and his wife, C.H., for the taxable year ending December 31, 2011, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that tax return to be filed with the Internal Revenue Service, and defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported total income of $49,586 on Line 22, when, as defendant HUYNH then well knew and believed, his and C.H.'s total income in taxable year 2011 was substantially more than $49,586.

COUNT TWELVE

[26 U.S.C. § 7206(1)]

21.  On or about June 18, 2012, in Los Angeles County, within the Central District of California, defendant MICHAEL HUYNH ("defendant HUYNH") did willfully make and subscribe to a false U.S. Income Tax Return for an S Corporation, IRS Form 1120S, for M.T.P. Medical Clinic, Inc. ("M.T.P. Medical Clinic"), for the taxable year ending December 31, 2011, which defendant HUYNH verified by a written declaration that it was made under the penalties of perjury, and caused that return to be filed with the Internal Revenue Service, which defendant HUYNH did not believe to be true and correct as to every material matter contained therein, in that the tax return falsely reported gross receipts or sales of $253,550 on Line 1b, when, as defendant HUYNH then well knew and believed, M.T.P. Medical

//
//
//
//
//
//
//
//
//
//
//
//
//

1   Clinic's total gross receipts and sales in taxable year 2011 were

2   substantially more than $253,550.

3                                    A TRUE BILL

4

5                                    /S/
                                     _____
                                     Foreperson
6

7   STEPHANIE YONEKURA
    Acting United States Attorney
8

9   ROBERT E. DUGDALE
    Assistant United States Attorney
10  Chief, Criminal Division

11  RICHARD E. ROBINSON
    Assistant United States Attorney
12  Chief, Major Frauds Section

13  JAMES A. BOWMAN
    Assistant United States Attorney
14  Deputy Chief, Major Frauds Section

15  STEVEN M. ARKOW
    Assistant United States Attorney
16  Major Frauds Section

17

18

19

20

21

22

23

24

25

26

27

28